REID *v.* KAROLEY.

5-2118                                                337 S. W. 2d 648

Opinion delivered May 23, 1960.

[Rehearing denied September 12, 1960]

*U. A. Gentry,* for appellant.

*Richard W. Hobbs* and *B. W. Thomas,* for appellees.

SAM ROBINSON, Associate Justice. This is the fourth time the parties hereto have been before this Court as the result of a series of controversies arising out of a contract executed by them on November 13, 1951. At that time the parties were joint owners of certain real and personal property located in Little Rock. The agreement required appellee to relinquish her interest in this property to appellant in consideration for which appellant agreed to pay appellee $250 per month for the remainder of her life or until she married. The contract further required that should appellant predecease appellee, then a payment by his estate to appellee would be made in the sum of $10,000. Pursuant to the agreement appellee conveyed her interest in said property to appellant and the $250 monthly payments were commenced. Thereafter the validity of the contract was raised by appellant in a suit brought for arrearages and we held the contract was valid. *Karoley* v. *Reid,* 223 Ark. 737, 269 S. W. 2d 322. Subsequently appellee was awarded a judgment totaling $8,500, but the lower court refused to grant appellee specific performance under the contract. This latter point was appealed and we held that since the body of the complaint did not state a cause of action for specific performance, such relief could not be

granted. *Karoley* v. *Reid,* 226 Ark. 959, 295 S. W. 2d 767.

In the meantime appellant had taken voluntary bankruptcy on September 14, 1955, and the above judgment and all future payments to become due under the contract were scheduled as a part of his liabilities. Appellee filed a claim in the bankruptcy proceeding for the amount of the judgment, but did not include in her claim any future payments to become due under the contract. Appellant was discharged in bankruptcy on November 13, 1956.

Appellee then filed the present suit in chancery court for further arrearages which had become due under the contract dating from appellant's adjudication as a bankrupt, and the lower court rendered appellee a judgment on the pleadings. This decision was reversed and the cause remanded for further proceedings. *Reid* v. *Karoley,* 229 Ark. 90, 313 S. W. 2d 381. Appellee then filed an amended complaint. The case was tried on its merits and a judgment was rendered for appellee in the amount of $12,000. The present appeal is from that judgment.

Appellant contends that the chancery court did not have jurisdiction because appellee has an adequate remedy at law. The record reflects that the first real objection to the jurisdiction of the court on this ground was made orally immediately preceding the taking of testimony on the merits when appellant's counsel asked that the cause be transferred to circuit court. Appellant argues that the question of jurisdiction was raised prior to this time by the filing of a demurrer, but we have held a number of times that the proper method of procedure in this type situation is by a motion to transfer and not by demurrer. *The Church of God in Christ* v. *The Bank of Malvern,* 212 Ark. 971, 208 S. W. 2d 770; *Higginbotham* v. *Harper,* 206 Ark. 210, 174 S. W. 2d 668.

Further, it is well established that where a defendant has answered and not reserved any objection to the jurisdiction of the court on the ground that there is an adequate remedy at law, he cannot insist on it at the

hearing unless the court is wholly incompetent to grant the relief sought. *Cockrell* v. *Warner,* 14 Ark. 345; *Trapnall, Ex'r., etc.,* v. *Hill, et al,* 31 Ark. 345.

The remainder of appellant's arguments for reversal are discussed together. Under the provisions of the U. S. Code a discharge in bankruptcy releases a bankrupt from all his provable debts, with some exceptions not applicable here. 11 U. S. C. § 35. Appellant contends that appellee's claim for future payments under the contract was provable; that it was scheduled by appellant in the bankruptcy action, and was therefore discharged.

Payments due under the contract can be terminated by either death of the appellee or her marriage; the first contingency can be calculated by reference to tables on life expectancy, yet it would be impossible to ascertain with any degree of certainty when the second or alternative contingency might occur. An analogous situation was presented in *Dunbar* v. *Dunbar,* 190 U. S. 340, 23 S. Ct. 757, 47 L. Ed. 1084, where the court said: "Even though it may be that an annuity dependent upon life is a contingent demand within the meaning of the bankruptcy act of 1898, . . . yet this contract, so far as regards the support of the wife, is not dependent upon life alone, but is to cease in case the wife remarries. Such a contingency is not one which, in our opinion, is within the purview of the act, because of the innate difficulty, if not impossibility, of estimating or valuing the particular contingency of widowhood. A simple annuity which is to terminate upon the death of a particular person may be valued by reference to the mortality tables. . . . But how can any calculation be made in regard to the continuance of widowhood when there are no tables and no statistics by which to calculate such contingency? How can a valuation of a probable continuance of widowhood be made? Who can say what the probability of remarrying is in regard to any particular widow? We know what some of the factors might be in the question: inclination, age, health, property, attractiveness, children. These would, at least, enter into the question as to the probability of continuance

of widowhood, and yet there are no statistics which can be gathered which would tend in the slightest degree to aid in the solving of the question.''

The appellant further urges that whether this claim was provable can only be decided by the court in the bankruptcy action and therefore the chancery court could not delve into the problem. Appellant contends that since appellee failed to file a claim for the future payments under the contract in the bankruptcy proceeding, and have that claim ruled on there, the question is now *res judicata*. We do not agree. In order to properly adjudicate the rights of the parties, the court in which the action is pending must look to the characteristics of the claim upon which suit is brought to determine whether the nature of the debt is such that would make it dischargeable in bankruptcy. *Raia* v. *Goldberg,* 33 Ala. App. 435, 34 So. 2d 620, and *Dick* v. *Dick,* 11 N. J. Super. 533, 78 A. 2d 580. As a matter of fact, a footnote to the order of discharge in the bankruptcy proceeding contains the following language: ''The Court is not obligated and therefore does not rule as to the question whether future payments (after date of adjudication) due on the contract signed October, 1951, between the bankrupt and Mary Karoley, comes within the discharge granted herein.'' We hold that the chancery court was correct in taking up the question of whether the claim for future payments under the terms of the contract was the type of debt which could be proved in appellant's proceeding in bankruptcy.

Under the authority of the *Dunbar* case cited above, we find the claim to be contingent and not provable within the requirements of the Bankruptcy Act, the debt was therefore not discharged, and the decree must be affirmed.