107 N.J. Super. 268 (1969)
258 A.2d 131
WINANS-CARTER CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
JAY & BENISCH, A NEW JERSEY PARTNERSHIP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1969.
Decided October 24, 1969.
*270 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. Marvin A. Sachs argued the cause for appellant (Messrs. Feuerstein and Sachs, attorneys).
Mr. Alan R. Chesler argued the cause for respondent (Messrs. Lowenstein, Sandler, Brochin & Kohl, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant appeals from an order which granted summary judgment in favor of plaintiff in the amount of $15,000 and denied defendant's motion for leave to file an amended answer asserting the defense of contributory negligence.
The facts are fully set forth in the opinion of the court reported in 103 N.J. Super. 389 (Law Div. 1968). In brief, they show that the contents of plaintiff's warehouse at South Main Road in Vineland were insured for $100,000 by four fire insurance policies issued through the defendant, plaintiff's insurance broker, who for seven years had handled the bulk of its insurance business. On March 14, 1967 plaintiff notified defendant it was moving to a new warehouse at West Elmer Road and would require insurance coverage at both places while the transfer was being made. Defendant sent plaintiff binders advising they were for *271 insurance coverage during the transfer. On April 3, after the transfer was completed, plaintiff notified defendant to cancel the insurance covering its former premises and to "make certain that coverage is now on [the] West Elmer address." On April 18 defendant sent plaintiff a letter stating that it was "enclosing endorsements changing the contents' coverage at Vineland from South Main Road to West Elmer Road."
On September 3 the new premises were completely destroyed by fire. It was then discovered that defendant, through the negligence of one of its employees, had failed to issue a binder or to procure a change of place endorsement for one of the four fire insurance policies  a policy issued by Commerce and Industry Company for $15,000. Defendant attempted to induce the insurance company to assume liability for the fire loss despite lack of the endorsement but without success. The fire loss was fixed at $97,577.31 and the other three insurance companies paid $82,577.31.
Plaintiff brought suit against defendant to recover the $15,000 loss resulting from its failure to transfer the Commerce and Industry insurance coverage. Plaintiff's complaint was in two counts charging (1) negligence and (2) breach of contract. Defendant's answer did not assert the defense of contributory negligence.
Plaintiff moved for summary judgment and defendant's opposing affidavit raised, for the first time, the defense of contributory negligence, alleging that plaintiff should have discovered that the policy had not been transferred when it received the endorsements sent by defendant on April 18. Defendant filed a cross-motion for summary judgment and moved for leave to file an amended answer to include the defense of contributory negligence.
The trial court held that defendant's liability was established on the undisputed facts and therefore plaintiff was entitled to a summary judgment. It also denied defendant's motion to amend its answer, holding that the proposed defense *272 of contributory negligence was not a defense to plaintiff's suit for breach of contract nor would it bar plaintiff's suit based on negligence. This appeal followed.
Defendant contends the court erred in denying its motion to file an amended answer raising the defense of contributory negligence because it was thereby precluded from raising a factual issue which would have required a plenary trial. We do not agree. It is undisputed that defendant failed to provide the insurance coverage it had undertaken to furnish, and further, it had not notified plaintiff of such failure. When an insurance broker, in accordance with instructions, undertakes to procure insurance coverage for his principal he impliedly undertakes to give notice to his principal in the event of his failure to procure such insurance. When he fails to procure the insurance coverage and to notify his principal thereof he is liable for any damage resulting therefrom. In such case the principal may sue either for breach of contract or in tort for breach of duty. Marano v. Sabbio, 26 N.J. Super. 201, 205 (App. Div. 1953); Rider v. Lynch, 42 N.J. 465, 477 (1964).
We agree with the conclusion of the trial court that plaintiff's failure to check the insurance policy endorsements when received is not a defense to plaintiff's action for breach of contract or negligence. Such omission did not contribute to defendant's nonperformance. Plaintiff may not be charged with such fault or contributory negligence, absent a showing that it had, in fact, been advised that the requested endorsement had not been procured. See Harris v. A.P. Nichols Investment Co., 25 S.W.2d 484 (Mo. Ct. App. 1930); Hampton Roads Carriers v. Boston Ins. Co., 150 F. Supp. 338, 343 (D.C. Md. 1957); White v. Calley, 67 N.M. 343, 355 P.2d 280 (Sup. Ct. 1960).
Defendant also argues in its brief that plaintiff had the duty of avoiding the consequences resulting from the breach of contract, i.e., the duty to mitigate damages. The doctrine of avoidable consequences was not asserted as a defense in defendant's answer nor was application made *273 to amend the answer to include it as an affirmative defense. Accordingly, it was waived. R.R. 4:12-8. Moreover, as indicated above, plaintiff had no opportunity to mitigate damages because it never knew of the breach of contract until after the loss occurred.
Finally, defendant claims the court erred in respect of damages in granting summary judgment for $15,000. It makes two contentions: (1) the fire damages were unliquidated and no competent or conclusive proof of the plaintiff's loss attributable to lapse of the Commerce and Industry policy was adduced, having in mind that plaintiff received $72,577.31 from the other three companies; (2) in any event one of the other companies, Royal, had issued coverage for $70,000 and plaintiff improperly accepted from it $67,577.31 on the mistaken assumption that the Commerce and Industry policy would be paid. From this defendant argues it should at least be excused from liability for the difference of $2,422.69. Neither argument has merit.
As to the first contention, the material issue here is plaintiff's loss arising from defendant's breach of contract or negligence, not necessarily what would have been recoverable in an action by plaintiff against any one or more of the insurance companies in actions on the policies.
The record establishes beyond any reasonable dispute the following. Defendant arranged for plaintiff to be represented by Sarasohn and Co. on the adjustment of its losses, and defendant participated with the latter in plaintiff's behalf in settling the amounts due on the four policies with General Adjustment Bureau, representative of all the carriers, and in preparing and submitting plaintiff's proof of loss for the following amounts as settled with the Bureau:

 Commercial Union $ 7,500.00
 Provident Washington 7,500.00
 American Reciprocal 15,000.00
 (Commerce and Industry)
 Royal Insurance 67,577.31
 __________
 $97,577.31

*274 On the basis of the arrangements thus effectuated by and with the active aid and participation of defendant, plaintiff accepted payment of the respective amounts indicated from each of the companies specified except Commerce and Industry, which denied coverage. It is clear beyond doubt that had the latter policy been in effect that company would have paid the $15,000 due on its policy as agreed to by the Bureau as industry representative. Consequently $15,000 is plaintiff's actual damage attributable to defendant's default in extending the coverage of the Commerce and Industry policy, and the amount of plaintiff's actual fire loss is immaterial.
The contention that defendant's liability should be reduced by the supposed additional amount of $2,422.69 collectible from Royal is frivolous. Defendant arranged for and acquiesced in the procedure by which plaintiff's claim against Royal was settled out at $67,577.31 and plaintiff relied on defendant in accepting that settlement. Royal can no longer be pursued by plaintiff (assuming further liability by it). Defendant is precluded from its present position on plain principles of estoppel.
Affirmed.